IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

MARTINA SIMPKINS, ET AL.,

        *Plaintiffs*,

v.

AMERICAN MODERN HOME
INSURANCE COMPANY, ET AL.

        *Defendants*.

Case No. 1:17-cv-0144
Hon. Liam O'Grady

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant American Modern Home Insurance Company's (AMHIC) Motion for Summary Judgment (Dkt. 37) and Defendants OCWEN Loan Servicing, LLC (OCWEN) and Deutsche Bank National Trust Company's (Deutsche Bank) Motion for Summary Judgment (Dkt. 39). The motions are fully briefed and the Court heard oral argument on January 12, 2018. For the following reasons and for good cause shown, the Court **GRANTS** summary judgment for the Defendants.

### I. Background[1]

Plaintiffs Martina and Anthony Simpkins own 6012 Pike Branch Drive, Alexandria, VA

---

[1] Plaintiff's response to the instant motions for summary judgment does not conform with Local Rule 56(b), which requires that opposition briefs to motions for summary judgment "include a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute." Rather, Plaintiffs have filed as an attachment to their opposition a 42-page document that contains a combination of asserted material facts in dispute – many without support in the record, improper argument, disputed legal conclusions labeled as material disputes of fact, and lengthy excerpts from exhibits. *See* Dkt. 45, Exh. 1 (identifying key disputed "facts" as 1) who was responsible for renewing and paying for hazard insurance, 2) were Plaintiffs intended third-party beneficiaries of an insurance contract, and 3) did the defendants breach a contract?). As courts in this district have noted, Local Rule 56 requires strict adherence to aid the court in fairly managing the heavy task of granting judgment in a matter, following discovery of thousands of pages of documents, based upon short briefs and exhibits. *See, e.g., Wood v. Credit One Bank*, 2017 WL 4203551, at * 4 (E.D. Va. Sep. 21, 2017).

22310 (the Property). Dkt.45, Exh. 1, ¶ 1. Deutsche Bank holds the deed of trust on the Property and OCWEN services the loan on the Property and have held these roles since before 2015. *Id.* ¶¶ 3, 5. On January 26, 2015, the Simpkins's home insurance through State Farm Casualty Company lapsed for non-payment. *Id.* ¶ 7. Pursuant to the deed of trust, OCWEN force-placed insurance on the Property through AMHIC. *Id.* Force-placed insurance, also known as lender-placed insurance, insures the lender's collateral when the borrower fails to maintain insurance, allowing the lender to protect its exposure on a property up to the amount of the mortgage on the date of issuance. *Williams v. Certain Underwriters at Lloyd's of London*, 398 F. App'x 44, 45 (5th Cir. 2010). OCWEN was the named insured on the AMHIC policy. Dkt. 40, "Undisputed Material Facts," ¶ 11. The AMHIC policy required AMHIC to pay the lesser of either the "repair or replacement cost of that part of the building damages using commonly used building materials" or "the amount actually and necessarily spent to repair or replace the damaged building." *Id.* The policy also provided that AMHIC would "adjust any loss with [OCWEN] and the mortgagor" and that AMHIC would "pay [OCWEN] to the extent of [OCWEN's] interest in the property," with excess benefits to be paid to the mortgagor. *Id.* Shortly after the force-placed insurance went into effect, on February 5, 2015, the Property sustained substantial fire damage. Dkt. 45, Exh. 1, ¶ 6.

Following the fire, AMHIC sent an adjuster to estimate repair costs for the home. Dkt. 40, "Undisputed Material Facts," ¶ 14. That estimate came out to $192,938.52, less a $1,000 deductible. *Id.* AMHIC also estimated recoverable depreciation in the amount of $34,494.74, bringing the total available funds for repair to the Property to $226,433.26. *Id.* Pursuant to this estimate, AMHIC issued a check to OCWEN in the amount of $191,938.52 to cover the costs of repairs, with the recoverable depreciation available as needed. *See Id.* ¶ 15. From these funds,

2

OCWEN began reimbursing the Simpkins for repairs. *Id.* ¶ 16. OCWEN agreed to pay for a second opinion adjuster on behalf of the Simpkins. *Id.* ¶ 17. That adjuster never performed work and the Simpkins have not presented any evidence that they obtained a second opinion on the costs of repair. In March 2016, Plaintiffs hired Joseph Mason, a general contractor, to complete the necessary repairs for $212,000, less than the $226,433.26 available. *See id.* ¶ 21. OCWEN issued $59,000 in funds to pay for the beginning of that repair work. *Id.* ¶ 24. In September 2016, despite Joseph Mason not going forward with repairs to the house, OCWEN reimbursed the Simpkins for approximately $7,000 in new appliances, which are now stored in the basement of another of Plaintiffs' residences. *Id.* ¶¶ 24, 25, 26. To date, the house has not been repaired. *Id.* ¶ 30. The current cost of repair to the home, in light of the initial damage and the three years the home has languished unrepaired, is $414,590. *See* Dkt. 45, Exh. 1, "F. Damages." The Simpkins owe approximately $513,000 on the property and the mortgage account has an arrearage of $27,000.

To this list of facts, Plaintiffs seek to add facts pertaining to why force-placed insurance became necessary based on a premise that OCWEN had breached the deed of trust by letting the State Farm policy lapse.[2] However, these facts are immaterial to the instant case because Plaintiffs never pleaded a breach of the deed of trust on this ground. It is well established that Plaintiffs cannot amend their complaint via responsive briefs at the summary judgment stage. *See, e.g., Zee Co. v. Williams, Mullen, Clarke & Dobbins, P.C.*, 871 F.Supp.2d 498, 507 n. 21 (E.D.Va. 2012).

---

[2] Noticeably absent from Plaintiffs' statement of facts is even a bald assertion that there were sufficient funds in escrow to cover payment of the insurance premium or that Plaintiffs properly remitted all mortgage payments on principal, interest, and escrow leading up to the lapse in State Farm coverage. *See* Dkt. 45, Exh. 1, "Disputed Facts," ¶¶ 1-14. Nor do Plaintiffs provide any evidence as to who remitted the insurance payments from 2011 to 2015, when the coverage lapsed. *Id.*

3

## II. Legal Standard

Summary judgment will be granted where, viewing the facts in a light most favorable to the non-moving party, there remains no genuine issue of material fact. FED. R. CIV. PRO. 56(c); *Marlow v. Chesterfield Cty. Sch. Bd.*. 749 F. Supp. 2d 417, 426 (E.D. Va. 2010). A party opposing a motion for summary judgment must respond with specific facts, supported by proper documentary evidence, showing that a genuine dispute of material fact exists and that summary judgment should not be granted in favor of the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Conclusory assertions of state of mind or motivation are insufficient. *Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir. 1988). As the Supreme Court has held, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 519 (4th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 247-248 (1986)) (emphasis in original).

## III. Discussion

Plaintiffs allege breach of contract against all Defendants and breach of duties imposed by the deed of trust against OCWEN and Deutsche Bank for failing to submit the highest and best claim for restoration and repair of the Property. In their opposition to the instant motions, Plaintiffs raise a third claim – that OCWEN breached the deed of trust by failing to timely remit insurance payments from the mortgage escrow account. Dkt. 45, p. 15. In arguing that OCWEN was properly put on notice of this claim, counsel for the plaintiffs, in oral argument, noted Paragraph 12 of the Amended Complaint, which reads in relevant part, "On or about January 26, 2015, Plaintiffs' insurance with State Farm Mutual Insurance covering the property lapsed…" *See* Dkt. 13, ¶ 12. However, this statement, contained in the Amended Complaint's "Statement

4

of Facts," is woefully insufficient to have put Defendants on notice that they were defending such a claim.[3] The claim not properly pleaded, the Court will not address it here.

*Breach of Contract*

To prove breach of contract, Plaintiffs must show 1) a legally enforceable obligation of Defendants to Plaintiffs, 2) breach of that obligation, and 3) damage arising from the breach. *Filak v. George*, 267 Va. 612, 614 (2004). It is uncontested that Plaintiffs were not named parties to the force-placed insurance contract. Nonetheless, Plaintiffs may have standing to sue for breach of that contract as third-party beneficiaries if the parties to the contract clearly and definitely intended to confer a benefit upon Plaintiffs that was more than merely incidental. *William v. AES Corp.*, 28 F. Supp. 3d 553, 569 (E.D. Va. 2014). Third-party beneficiary status is manifested by the clear and definite intent of both parties. *Copenhaver v. Rogers*, 238 V. 361, 367 (1989); *Valley Landscape Co., Inc. v. Rolland*, 218 Va. 257, 259-60 (1977).

Plaintiffs contend that four key undisputed material facts demonstrate that they are third-party beneficiaries. First, a force-placed insurance policy provision states that losses will be adjusted with both the mortgagor and the named insured. Dkt. 45, pp. 8-9. Second, a force-placed insurance policy provision entitles the mortgagor to insurance proceeds paid in excess of the balance of the loan. *Id.*, p. 9. Third, William Heed, an AMHIC employee, stated in his deposition that the contract "co-benefits" the mortgagor. *Id.* And fourth, Derrick Raleigh, an OCWEN employee, stated in his deposition that the force-placed insurance "might or might not protect borrower's equity in the property or the contents of the property against any risk . . .". *Id.*, pp. 10-11. Plaintiffs additionally contend that an unnamed OCWEN representative stated to Ms. Simpkins, "don't worry, we have you covered" after the fire. *Id.*

---

[3] Subsequent to the oral arguments on the fully briefed motions for summary judgment, Plaintiffs filed two motions for leave to file a second amended complaint (Dkt. Nos. 49 and 51). The Court denied these motions as unduly delayed. Dkt. No. 53.

These facts demonstrate that Plaintiffs are merely incidental beneficiaries, not third-party beneficiaries, of the force-placed insurance contract. Force-placed insurance policies insure the lender's collateral. *Williams v. Certain Underwriters at Lloyd's of London*, 398 F. App'x 44, 45 (5th Cir. 2010). The deposition testimony that Plaintiffs could "co-benefit" from the force-placed insurance policy is plainly accurate, as the named insured's interest in restoring the value in the collateral happens to mirror Plaintiffs' interest in repairing the home. The statements by OCWEN and AMHIC employees simply do not support a finding that Plaintiffs were anything but incidental beneficiaries.

Plaintiffs fare no better with the plain terms of the force-placed policy. An obligation to adjust with the mortgagor, in addition to the named insured, does not suggest any benefit but that – a right to be involved with the process. Plaintiffs are, after all, still the homeowners of the collateral property. Plaintiffs do not deny that there was communication at the adjustment stage and that they failed to put forth an independent adjustment. The plain terms of the force-placed policy require the mortgagor to be involved with the adjustment process, but this provision cannot be read to entitle the mortgagor to an adjustment figure that personally satisfies her or to control that adjustment process as though she herself is the named insured.

Insofar as the force-placed policy might provide insurance proceeds directly to the mortgagors, that would only be the case if the policy paid out more than the mortgagee's security interest in the property. That was not the case here. This fact further evidences that any benefit the force-placed policy conferred on Plaintiffs was merely incidental to the narrow purpose of the force-placed policy – protecting the lender.

The undisputed material facts cannot give rise to a finding that Plaintiffs were third-party beneficiaries of the force-placed insurance policy. Accordingly, they are without standing to sue

for an alleged breach of the policy. *See William v. AES Corp.*, 28 F. Supp. 3d 553, 569 (E.D. Va. 2014).[4]

Even if Plaintiffs could demonstrate that they were third-party beneficiaries of the force-placed insurance agreement, they cannot prove breach of any duty owed to them. The undisputed material facts in this case show that AMHIC promptly had an adjustment done on the damage and paid the value of that adjustment to OCWEN, the named insured on the force-placed policy. Plaintiffs were invited to submit a competing adjustment. Ms. Simpkins claimed in her deposition that AMHIC refused to speak with her, but that self-serving claim is not borne out by the facts and is immaterial to whether adjustment was done with the named insured and the mortgagor. Rather, there is no dispute that Plaintiffs were apprised of the adjustment and that steps were taken for Plaintiffs to obtain a competing estimate for repairs that would be paid for by OCWEN. Plaintiffs never obtained a competing estimate and in fact found a contractor who was willing to complete the repairs for less than the amount of AMHIC's adjustment.

This fact is fatal to Plaintiffs' claim of damage arising from the alleged breach. Today, three years after the fire and while the property has languished unrepaired and unoccupied, Plaintiffs have evidence that repairs would cost $414,590. Plaintiffs are correct that this evidence is admissible and can demonstrate damages. However, undercutting Plaintiffs' argument that the adjustment was insufficient to repair the house is that they have no evidence that the adjustment *at the time of the loss* was insufficient. Indeed, it is undisputed that Plaintiffs found a contractor willing to do the work for the amount of the original adjustment. Plaintiffs' failure to follow through with that work or otherwise demonstrate that the work could not, in fact, be done for that price leaves them without evidence that they suffered damage by any alleged breach.

---

[4] Mr. Simpkins also lacks standing because he was not a party to the deed of trust and thus is not a mortgagor. Plaintiffs did not rebut this point in their response brief.

7

Plaintiffs do not have standing, as a matter of law, to sue on the force-placed insurance policy. Even with standing, Plaintiffs have not put forth evidence supporting any of the elements of breach of contract. Accordingly, Defendants are entitled to summary judgment on Count I of the Amended Complaint.

*Breach of the Deed of Trust*

As to Count II of the Amended Complaint, Plaintiffs claim that OCWEN and Deutsche Bank breached the deed of trust on the Property by failing to adjust for the full value of the loss.[5] Plaintiffs have failed to identify a provision of the deed of trust that gives rise to such an obligation.[6] Plaintiffs have also failed to put forth any evidence that the adjustment offered by AMHIC and accepted by OCWEN was insufficient to cover the full value of the loss (as noted *supra*).

While Plaintiffs claim that OCWEN knew the amount to be insufficient, the basis of that alleged knowledge is Plaintiffs' own statements to OCWEN that the Plaintiffs *believed* the adjustment to be insufficient. *See* Dkt. 45, pp. 17-18. Plaintiffs' mere belief, absent any supporting documentation, would not compel OCWEN and Deutsche Bank to dispute the adjustment even if there were an obligation to do so. After extensive discovery, this mere belief conveyed to OCWEN shortly after the adjustment remains the only evidence that the adjustment was insufficient to cover repairs to the home. Mere belief is insufficient evidence at the summary judgment stage. *E.g. Doyle v. Sentry Ins.*, 877 F. Supp. 1002, 1005 (E.D. Va. 1995). Accordingly, OCWEN and Deutsche Bank are entitled to summary judgment on Count II of the Amended Complaint.[7]

---

[5] As noted *supra*, Mr. Simpkins has no standing to sue on the deed of trust.
[6] Plaintiffs also did not rebut OCWEN's argument that it is not a party to the deed of trust and therefore cannot breach it.
[7] OCWEN and Deutsche Bank also credibly claim that Plaintiffs are equitably estopped from asserting a breach of

8

## IV. Conclusion

For these reasons and for good cause shown, Defendants are entitled to summary judgment and their motions are **GRANTED**. The Clerk is directed to enter judgment in Defendants' favor pursuant to FED. R. CIV. P. 58.

It is so **ORDERED**.

March 16, 2018  
Alexandria, Virginia

Liam O'Grady  
United States District Judge

---

contract claim under the deed of trust because they moved forward with repairs before changing course and deciding to litigate. Plaintiffs did not address this argument in their response and therefore conceded it. However, because the Court has concluded that Count II fails for other reasons, it need not reach the equitable estoppel issue.